**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE ALBERTO GONZALEZ-
CARAVEO; MONICA RODRIGUEZ-
FLORES,

*Petitioners*,

v.

JEFFERSON B. SESSIONS III,
Attorney General,

*Respondent.*

No. 14-72472

Agency Nos.
A087-534-130
A087-534-132

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 17, 2017
San Francisco, California

Filed February 14, 2018

Before: Ronald M. Gould and Mary H. Murguia, Circuit
Judges, and Nancy Freudenthal,[*] Chief District Judge.

Opinion by Judge Murguia

---

[*] The Honorable Nancy Freudenthal, Chief United States District
Judge for the District of Wyoming, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Jose Alberto Gonzalez-Caraveo and Monica Rodriguez-Flores's petition for review of a Board of Immigration Appeals decision, holding that this court has jurisdiction to review the agency's administrative closure decisions and that the immigration judge and the BIA erred in not reviewing petitioners' administrative closure request, but concluding that remand was not required, and also holding that substantial evidence supported the denial of relief under the Convention Against Torture.

The panel noted that the BIA's decision in *Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012), provided a list of non-exhaustive factors for an IJ and the BIA to consider in determining whether administrative closure is appropriate, and that, prior to *Avetisyan*, this court held, in *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114 (9th Cir. 2009), that it lacked jurisdiction over denials of administrative closure. The panel held that this court now has jurisdiction to review administrative closure claims because the *Avetisyan* factors provide a sufficiently meaningful standard against which to review IJ and BIA decisions regarding administrative closure.

The panel concluded that the IJ erred in determining that he lacked authority to review petitioners' motion for administrative closure and that the BIA also erred in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

concluding that the IJ had no jurisdiction over administrative closure. The panel observed that, ordinarily, remand would be the appropriate remedy for such errors, but concluded that remand was not warranted because petitioners had not argued or shown that they are eligible for administrative closure under the *Avetisyan* factors. The panel also rejected petitioners' contention that the IJ and BIA's failure to consider administrative closure violated their due process rights, concluding that petitioners had not demonstrated prejudice.

Finally, the panel concluded that substantial evidence supported the denial of CAT relief, rejecting petitioners' argument that the IJ and BIA failed to consider all evidence relevant to that claim.

## COUNSEL

Jesse Evans-Schroeder (argued) and Matthew H. Green, Law Offices of Matthew H. Green, Tucson, Arizona, for Petitioners.

Jonathan Robbins (argued), Jennifer Paisner Williams, and Jesse M. Bless, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

MURGUIA, Circuit Judge:

Petitioners, Jose Alberto Gonzalez-Caraveo and Monica Rodriguez-Flores, are husband and wife.[1] Both are natives and citizens of Mexico. Petitioners challenge the denial of their claim to relief under the Convention Against Torture ("CAT"). Petitioners also contest the Immigration Judge's ("IJ") and Board of Immigration Appeals' ("BIA" or the "Board") refusal to review their request for administrative closure, a procedural tool used in immigration proceedings that temporarily removes a pending case from the Immigration Court or BIA's calendar. We hold that Petitioners' claim for relief under CAT is denied. We also hold that the IJ and the BIA erred by not reviewing Petitioners' administrative closure request, but we conclude remand is not required in this case. Accordingly, this claim is also denied.

## I.  Background

In 2009, after a traffic stop, Petitioners, as well as their two young daughters, were placed in removal proceedings for overstaying their visas. *See* Immigration and Nationality Act ("I.N.A.") § 237(a)(1)(C)(i). At the family's merits hearing before the IJ in 2013, the Department of Homeland Security ("the Department") moved to administratively close Petitioners' daughters' cases, and the IJ granted the motion. Petitioners conceded removability but sought relief. They originally requested asylum but withdrew their application because they did not meet the one-year filing

---

[1] Mr. Gonzalez-Caraveo is the lead Petitioner, and his wife is a derivative applicant.

deadline. Petitioners proceeded with applications for withholding of removal and protection under CAT.

Because Petitioners believed they fell within the parameters of prosecutorial discretion, they submitted requests to the Department for administrative closure of their cases in June 2011, February 2012, August 2012 and February 2013.[2] Petitioners' counsel asked the IJ to consider Petitioners' request for administrative closure, but the IJ stated the Department denied the requests and that he had "no authority with respect to the Department's decisions."

At the merits hearing, Petitioner Gonzalez-Caraveo testified about his fear of returning to Mexico after living in the United States for approximately fifteen years. He stated he was afraid to return because of the general violence in Mexico and because he and his family, especially his young daughters, might be targeted because they would be perceived as having money after living in the United States for many years.

Petitioner Gonzalez-Caraveo also testified about several family members who had recently been killed in Mexico. His brother, cousin, uncle, and a cousin's husband had all been killed. Although the police had started investigating at least one of the murders, the head investigator in one investigation was also murdered. Petitioner Gonzalez-Caraveo did not know the reasons for any of the murders but speculated that his uncle may have been killed because his uncle's son was a policeman. Petitioner Gonzalez-Caraveo stated he believed he and his family would face violence as well. He also

---

[2] Administrative closure, although a procedural and administrative tool, has also been used by the Department as a means of prosecutorial discretion.

testified he did not believe the Mexican police would be able to assist or protect him because of the failed murder investigations into the murders of his own family members and because police officers often cannot be trusted. Petitioners submitted various reports regarding violence in Mexico, government corruption and other country conditions.

The IJ denied Petitioners' claims. Although the IJ found Petitioner Gonzalez-Caraveo credible, the IJ found his fear unreasonable because Petitioner Gonzalez-Caraveo continued to visit family in the area he claimed he was afraid to return. As to the withholding claim, the IJ found Petitioner Gonzalez-Caraveo could not show that his life or freedom would be threatened in Mexico, on account of the two enumerated bases for persecution he raised—nationality or membership in a particular social group. Addressing the CAT claim, the IJ stated Petitioner Gonzalez-Caraveo's assertion that he might be subject to "some random violent act in Mexico is not a proper ground for . . . [CAT relief]." Petitioners appealed.

The BIA dismissed Petitioners' claims on appeal. The BIA affirmed the IJ's determination that Petitioners failed to establish an enumerated ground for a basis for persecution, and therefore, they could not show nexus for their persecution claim under withholding of removal. The BIA addressed the CAT claim only by stating, "[w]e agree with the Immigration Judge that the evidence of record is insufficient to establish the likelihood of torture by, or with the consent or acquiescence of, the Mexican Government."

The BIA also rejected Petitioners' argument that the IJ violated their due process rights by not reviewing and denying their administrative closure request. The BIA

concluded that the IJ correctly noted he had no jurisdiction over the administrative closure issue.

The BIA also rejected Petitioners' due process claim that the IJ showed bias due to certain remarks demonstrating frustration with Petitioners' counsel or abandoned his neutrality by questioning witnesses. Petitioners do not raise this claim on appeal and have waived it. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) (holding failure to raise arguments in opening brief constitutes waiver). Petitioners also do not raise their withholding of removal claim on appeal and have waived that claim. *See id*.

## II. Legal Standards

"Where, as here, the BIA adopts the IJ's decision while adding some of its own reasoning, we review both decisions." *Lianhua Jiang v. Holder*, 754 F.3d 733, 737–38 (9th Cir. 2014) (internal quotation marks and citation omitted). We review factual findings for substantial evidence. *Id*. at 738. We review de novo the BIA's determination of purely legal questions and claims of due process violations in immigration proceedings. *Id*.

## III. Analysis

### A. Petitioners' Administrative Closure and Related Due Process Claim

#### 1. Relevant Background of Administrative Closure

Administrative closure is a procedure by which an IJ or the BIA temporarily removes a case from the active calendar or docket as a matter of administrative convenience and docket management. *Diaz-Covarrubias v. Mukasey*,

551 F.3d 1114, 1116 (9th Cir. 2009) (citing *In re Gutierrez-Lopez*, 21 I. & N. Dec. 479, 480 (BIA 1996), *overruled on other grounds by Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012)). Although this procedure is regularly used, it is not described in the immigration statutes or regulations.

Administrative closure does not result in a final order. *Avetisyan*, 25 I. & N. Dec. at 695. At any time after a case has been administratively closed, the Department may move to recalendar the matter. *Id*. Generally, administrative closure is proper when the parties are "await[ing] an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Id*. at 692. One such example would be when an individual "demonstrates that he or she is the beneficiary of an approved visa petition filed by a lawful permanent resident spouse who is actively pursuing, but has not yet completed, an application for naturalization." *Id*. at 696.

Under prior BIA case law, an IJ or the BIA could not administratively close a case if either party opposed closure. *Gutierrez-Lopez*, 21 I. & N. Dec. at 480. In practice, this had the effect of allowing the Department to unilaterally control and decide administrative closure. In 2012, the BIA overruled *Gutierrez-Lopez*. *See Avetisyan*, 25 I. & N. Dec. at 697. *Avetisyan* held *Gutierrez-Lopez* "directly conflicts with the delegated authority of the Immigration Judges and the Board and their responsibility to exercise independent judgment and discretion in adjudicating cases and to take any action necessary and appropriate for the disposition of the case." *Id*. at 693.

IJs and the BIA have the authority to regulate the course of immigration proceedings. *See* 8 C.F.R. §§ 1003.1(d)(1)(ii), 1003.10(b). The Department has the

sole discretion to commence removal proceedings and, prior to initiation of proceedings, may cancel a notice to appear for specified reasons. *Avetisyan*, 25 I. & N. Dec. at 690–91 (citing 8 C.F.R. §§ 235.6(a), 239.1(a), 239.2(a), 1239.2(a)). The Department may also move to dismiss proceedings. *Id.* at 691 (citing 8 C.F.R. §§ 239.2(c), 1239.2(c)). Once a notice to appear is filed with the Immigration Court, however, jurisdiction over the individual's immigration case vests with the IJ, and it is the IJ's duty to adjudicate the case. *Id.* (citing 8 U.S.C. § 1229a(a)(3), (c)(1)(A); I.N.A. § 240(a), (c)(1)(a); 8 C.F.R. §§ 1003.14(a), 1240.1(a)(1)(i), 1240.11). In individual cases, IJs and the BIA "shall exercise their independent judgment and discretion . . . ." 8 C.F.R. §§ 1003.1(d)(1)(ii); 1003.10(b). They may take "any action consistent with their authorities under the [Immigration and Nationality Act] and the regulations" as "appropriate and necessary for the disposition" of the case. *Id.*; *see also Avetisyan*, 25 I. & N. Dec. at 691. From the regulatory language, it is evident that IJs and the BIA are empowered to take various actions for docket management. Allowing the Department or a petitioner to have absolute veto power over administrative closure is an impermissible violation of the IJ and BIA's delegated authority and responsibility to adjudicate cases. *Avetisyan*, 25 I. & N. Dec. at 693.

In the context of other types of administrative matters— motions to reopen and requests for continuances—the BIA and the Ninth Circuit, as well as other circuits, have rejected allowing such veto power to a party. *Id*.; *see Matter of Lamus-Pava*, 25 I. & N. Dec. 61, 64–65 (BIA 2009) (overruling prior BIA law and holding that a motion to reopen may not be denied based solely on Department opposition and without regard to the merit of the opposition); *Ahmed v. Mukasey*, 548 F.3d 768, 772 (9th Cir. 2008) (holding that when the Department opposes a motion to

reopen for adjustment of status the BIA can consider the objection but not deny the motion solely on the Department's objection); *Matter of Hashmi*, 24 I. & N. Dec. 785, 790–91 (BIA 2009) (addressing DHS opposition to a request for a continuance and holding that an IJ should evaluate the request under the totality of the circumstances, not giving much weight to an unsupported DHS opposition); *Malilia v. Holder*, 632 F.3d 598, 606 (9th Cir. 2011) (approving the factors set forth in *Matter of Hashmi*).

Like a motion to reopen or a motion for a continuance, administrative closure is a tool that an IJ or the BIA must be able to use, in appropriate circumstances, as part of their delegated authority, independence and discretion. *See* 8 C.F.R. §§ 1003.10(b), 1003.1 (d)(1)(ii); *Avetisyan*, 25 I. & N. Dec. at 694. Allowing the IJ and BIA to make administrative closure decisions does not encroach on the Department's role in instituting proceedings. *See Avetisyan*, 25 I. & N. Dec. at 694. Administrative closure does not result in a final order, and the Department may always move to recalendar the case or seek immediate review of the decision. *See id*. at 695.

Significantly, *Avetisyan* provides a list of non-exhaustive factors for an IJ and the BIA to consider in determining whether administrative closure is appropriate in a given case. *Id*. at 696. The factors are:

> (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in

contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order) when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board.

*Id*. The *Avetisayn* factors are "particularly relevant to the efficient management of the resources of Immigration Courts and the Board and . . . are routinely evaluated by Immigration Judges, the Board, and the circuit courts." *Id*. at 695. As *Avetisyan* noted, circuit courts and the Board have developed and applied "meaningful standards for assessing the propriety of . . . decisions" that "impact[] the course of removal proceedings initiated by the DHS." *Id*. (citing *Ahmed*, 548 F.3d at 768).

The *Avetisyan* factors provide a meaningful standard for this Court to assess the propriety of administrative closure decisions.

### 2. This Court's Jurisdiction to Review Administrative Closure

Before we can reach the merits of Petitioners' administrative closure claim, we must address whether we have jurisdiction. "[W]e have jurisdiction to determine our own jurisdiction." *Sareang Ye v. I.N.S.*, 214 F.3d 1128, 1131 (9th Cir. 2000).

Prior to *Avetisyan*, we considered whether we had jurisdiction over the denials of administrative closure and held we did not. *Diaz-Covarrubias*, 551 F.3d at 1117–20. For guidance, we looked to the United States Supreme Court's decision in *Heckler*, from which our Court

established that where there is no "sufficiently meaningful standard," this Court cannot review an agency's decision. *Id*. at 1117–18 (citing *Heckler v. Chaney*, 470 U.S. 821 (1985) (involving prison inmates' action to compel the Food and Drug Administration ("FDA") to take an enforcement action based on a claim that use of the drugs used for lethal injections violated the Federal Food, Drug, and Cosmetic Act)). In assessing whether a "sufficiently meaningful standard" exists, we have considered three things—language in the relevant statute; language in the relevant regulations; and, in the immigration context, BIA decisions specifying a standard for IJs and the BIA to follow. *Id*. at 1117 (citing *Ekimian v. I.N.S.*, 303 F.3d 1153, 1157–58 (9th Cir. 2002) (holding we lacked jurisdiction to review the BIA's refusal to reopen the deportation proceeding *sua sponte* because the relevant statutes, regulations and BIA decision did not provide a sufficiently meaningful standard)).**[3]**

We applied these principles in *Diaz-Covarrubias* and noted that there was no clear statutory or regulatory basis for administrative closures and that the BIA had not "set forth any meaningful standard for exercising its discretion to

---

**[3]** In *Ekimian*, this Court looked at the relevant BIA case law to determine whether there was a "sufficiently meaningful standard" for this Court to follow to determine whether the BIA abused its discretion in declining to *sua sponte* reopen deportation proceedings. 303 F.3d at 1157–59 (citing *Matter of J-J-*, 21 I. & N. Dec. 976, 984 (1997) (explaining that the applicable regulation, 8 C.F.R. § 3.2(a), allows the BIA to reopen proceedings *sua sponte* in "exceptional situations")). This Court held that the phrase "exceptional situations," without any explanation or definition of that phrase, did not provide a sufficiently meaningful standard against which to judge the BIA's decision not to reopen under § 3.2(a). *Id*. at 1158–59. Accordingly, that vague standard, without more, did not authorize the Court to review the BIA's decision for abuse of discretion. *Id*. at 1158.

implement an administrative closure." *Id*. at 1118. Given this lack of guidance, we held we could not discover a "sufficiently meaningful standard" by which to evaluate the BIA's decision not to close a case, and we therefore lacked jurisdiction to review a claim challenging administrative closure decisions. *Id*. at 1118. (quoting *Ekimian*, 303 F.3d at 1159).

*Avetisyan* and its six descriptive, though non-exhaustive factors, now provide a "sufficiently meaningful standard" by which to evaluate the IJ or BIA's decision. *See Avetisyan*, 25 I. & N. Dec. at 696. Although there is no applicable statutory or regulatory language specifying the standards for administrative closure, *Avetisyan* provides guidance from the third source of information our Court has looked to in determining whether guidance exists—BIA decisions. *See Diaz-Covarrubias*, 551 F.3d at 1117.

We are not persuaded by the Department's contention that *Heckler* supports the conclusion that we do not have jurisdiction. *Heckler* involved whether the FDA's decision not to undertake a certain enforcement action was subject to judicial review under the Administrative Procedure Act. *See Heckler*, 470 U.S. at 823. *Heckler* held that although there is usually a presumption of reviewability of agency actions, that presumption does *not* apply to agency decisions regarding enforcement actions. *Id*. at 827, 831–32. Enforcement actions are different from the administrative tool at issue in this case. Enforcement actions are uniquely within an agency's expertise. *Id*. Nothing about Petitioners' request or our decision encroaches on the Department's ability to make enforcement decisions and decide whether or not to initiate removal proceedings against an individual.

Also, administrative closure—a decision to continue a matter by taking it off the Immigration Court or BIA's

docket—is not the sort of decision that "involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Id*. at 831; *see also Vahora v. Holder*, 626 F.3d 907, 918 (7th Cir. 2010). Although some of the *Avetisyan* factors, such as the anticipated duration of an individual's immigration proceeding's closure, may be issues with which an IJ is more familiar based on his or her experience, the *Avetisyan* factors are not so unique to the agency that this Court would be unable to evaluate them with the assistance of the parties' briefing. The Seventh Circuit, in distinguishing *Heckler*, concluded that administrative closure is much like other procedural rulings in immigration proceedings that courts review, such as an IJ's refusal to grant a continuance. *Vahora*, 626 F.3d at 918. In addition, the agency's administrative closure decision can affect one's liberty, which is an area that federal courts are often called upon to protect. *See Heckler*, 470 U.S. at 832; *Vahora*, 626 F.3d at 918. Nothing in *Heckler* precludes us from exercising jurisdiction in this case.

Because the *Avetisyan* factors provide this Court with a "sufficiently meaningful standard" by which to evaluate the IJ or BIA's decision, we hold that this Court has jurisdiction to review administrative closure decisions. *See Avetisyan*, 25 I. & N. Dec. at 696.[4] In so holding, we join the Fourth, Sixth, Seventh, and Eighth Circuits, which have all exercised

---

[4] To the extent the Department challenges the IJ and BIA's authority to review and decide a motion for administrative closure over the objection of the Department, *Avetisyan* squarely addressed the issue and clarified that the IJ and BIA have independent authority over such decisions. *Avetisyan*, 25 I. & N. Dec. at 693. *Avetisyan* is supported by the authority delegated to the IJ and the BIA through the federal regulations. *Id*. at 690–91; 8 C.F.R. §§ 1003.1(d)(1)(ii), 1003.10(b).

jurisdiction to review denials of motions for administrative closure. *See Gonzalez-Vega v. Lynch*, 839 F.3d 738, 741 (8th Cir. 2016); *Duruji v. Lynch*, 630 F. App'x 589, 592 (6th Cir. 2015) (unpublished); *Santos-Amaya v. Holder*, 544 F. App'x 209, 209 (4th Cir. 2013) (unpublished per curiam) (not explicitly stating the court had jurisdiction but reviewing the IJ's denial of motion for administrative closure); *Vahora*, 626 F.3d at 918–19. The Eighth Circuit's case, *Gonzalez-Vega*, is particularly instructive given that, like the Ninth Circuit, the Eighth Circuit had pre-*Avetisyan* case law holding it did not have jurisdiction to review administrative closure decisions. *Gonzalez-Vega*, 839 F.3d. at 740. The Eighth Circuit overruled that prior case law and held that *Avetisyan* "supplied a useable standard for reviewing denials of administrative closure," and the court could exercise jurisdiction. *Id*. at 741.

Holding that we have jurisdiction, we now turn to the merits of Petitioners' administrative closure claim.

### 3. Petitioners' Administrative Closure Claim

The IJ erred when he did not review Petitioners' motion for administrative closure because he thought he did not have authority over the Department's opposition to the request. *Avetisyan* clearly directs that IJs conduct their own independent assessment, considering the *Avetisyan* factors, to determine whether a request for administrative closure should be granted. *Avetisyan*, 25 I. & N. Dec. at 694–96. The BIA also erred when it stated that the IJ correctly noted that he had no jurisdiction over administrative closure.[5] The IJ

---

[5] In its decision, the BIA appears to use prosecutorial discretion interchangeably with administrative closure. Although in practice the Department has sometimes used administrative closure as a means of

and the BIA must independently consider whether administrative closure is warranted based on the *Avetisyan* factors, despite the Department's objection. Ordinarily, where both the IJ and the BIA erred by not independently reviewing Petitioners' administrative closure request, remand would be the appropriate remedy.

Petitioners, however, do not make any argument that their case should be eligible for administrative closure based on the *Avetisyan* factors. Petitioners do not contend that they have any relevant, pending immigration application, petition or appeal[6] outside of their control, such as a family-based visa petition. *See id.* at 692. Although Petitioners assert their case should be remanded because they are "good candidates" for prosecutorial discretion, the IJ, BIA and our court's decision is guided by the federal regulations and BIA's guidance in *Avetisyan*. In addition, for the reasons below, we deny Petitioners' remaining claim for relief—their CAT claim. Accordingly, Petitioners are no longer eligible for any form of relief.

Petitioners also argue that the IJ and BIA violated their due process rights by failing to address their administrative closure claim. Although the IJ and BIA erred, Petitioners have not demonstrated prejudice by showing how the outcome of their proceedings may have been affected by the

---

prosecutorial discretion, allowing IJs or the BIA to decide whether administrative closure is warranted in a given case does not give them power over prosecutorial discretion because the IJs and BIAs must follow the *Avetisyan* factors that are based on administration and efficiency of the Immigration Courts and the BIA.

[6] For example, a criminal appeal that challenges a conviction that is the basis for one's removal may be relevant to one's eligibility for immigration relief.

alleged due process violation. *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006). Because Petitioners do not show prejudice, this claim fails. *See id*.

In sum, despite the IJ and BIA's legal error, remand is not required here because Petitioners no longer have any remaining claims for relief or pending petitions that might affect their immigration proceedings.

## B. Petitioners' CAT Claim

To be eligible for CAT relief, a petitioner must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "The torture must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Aguilar-Ramos v. Holder*, 594 F.3d 701, 704 (9th Cir. 2010) (quoting 8 C.F.R. § 1208.18(a)(1)). "[A] CAT applicant may satisfy his burden with evidence of country conditions alone." *Id*. at 705. "[W]here there is any indication that the BIA did not consider all the evidence before it, a catchall phrase does not suffice, and the decision cannot stand." *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011). "Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." *Id*. at 772.

Petitioners claim that, in assessing their CAT claim, the IJ failed to consider all evidence relevant to the possibility of torture. They point to the general evidence of human rights violations in Mexico and Petitioner Gonzalez-Caraveo's testimony regarding the murders of his family members. Because there was no adverse credibility finding, we assume Petitioners' factual assertions are true and determine whether the facts, and their reasonable inferences,

satisfy the elements of the claim for relief. *Aguilar-Ramos*, 594 F.3d at 704.

There is no indication that the IJ or BIA did not consider all the evidence before them. *See Cole*, 659 F.3d at 771–72. Although the IJ and BIA could have elaborated in their respective decisions, there is no indication of misstating the record or of the IJ failing to mention critical evidence. *See id*. The IJ did not fail to consider country conditions. *See Aguilar-Ramos*, 594 F.3d at 705. The IJ's statement that there was evidence in the record that showed the Mexican government was at times complicit in cartel work shows that the IJ did review the record, he was just not persuaded by it. The IJ considered Petitioner Gonzalez-Caraveo's testimony and while the IJ found him credible, the IJ did not find there was sufficient evidence of the possibility of torture from which the Mexican government could not protect him to justify relief under CAT.

As to the BIA's decision, it need not discuss each piece of evidence submitted. *Cole*, 659 F.3d at 771. A general statement that the BIA considered all the evidence can suffice where nothing in the record indicates a failure to consider all the evidence. *Id*. The BIA also cited case law that supported its conclusion that generalized evidence of violence and crime in Mexico is not particular to Petitioners and insufficient to meet the standard for relief under CAT. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (holding that, as to CAT relief, generalized evidence of violence and crime in Mexico is not particular to a petitioner and insufficient to establish that torture is more likely than not).

Finally, factual determinations supporting the denial of CAT relief are reviewed under a deferential substantial evidence standard, and the evidence in the record does not

compel a conclusion contrary to that of the IJ and BIA. *Cole*, 659 F.3d at 770. We deny Petitioners' CAT claim.

## IV. Conclusion

Because the *Avetisyan* factors, rooted in the regulatory grant of authority to IJs and the BIA, provide a sufficiently meaningful standard against which to review IJ and BIA decisions regarding administrative closure, we have jurisdiction to review Petitioners' administrative closure claim. Although remand would usually be appropriate where the IJ and BIA did not conduct an independent review of a request for administrative closure, here Petitioners have not argued or shown how they are eligible for administrative closure under the *Avetisyan* factors. Petitioners also have no pending petitions or other requests for immigration relief that might make remand necessary. Finally, substantial evidence supports the IJ and BIA's decision denying Petitioners' CAT claim and this claim also fails.

Petition is **DENIED**.