**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAUL PEREZ CRUZ, | No. 24-2865 |
| *Petitioner*, | Agency No. A041-269-217 |
| v. | |
| PAMELA BONDI, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 14, 2025[*]
Pasadena, California

Filed July 21, 2025

Before: Sandra S. Ikuta, Ryan D. Nelson, and Kenneth K.
Lee, Circuit Judges.

Opinion by Judge R. Nelson

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel denied a petition for review by Raul Perez Cruz of the Board of Immigration Appeals' denial of protection under the Convention Against Torture ("CAT") based on Perez Cruz's claims that (1) the record compels a contrary conclusion, (2) the agency did not consider all evidence before it, and (3) technological issues during the hearing before the Immigration Judge ("IJ") violated his due process rights.

Applying the presumption of regularity that the agency acted "properly and according to law" in reviewing the evidence before it, the panel held that substantial evidence supported the agency's determination that Petitioner did not meet his burden to show that "it is more likely than not that [he] will be tortured upon return to" Mexico, despite his past experiences with the cartels and his fear of retaliation because of his purported cooperation with the United States government. The panel further held that substantial evidence supported the IJ's finding that Petitioner failed to show that he could not safely relocate in Mexico, given speculative evidence that the cartel knew of his government cooperation, evidence of country conditions, and the 14 years that have elapsed since the last incident with the cartel. Petitioner did not overcome the presumption that the agency reviewed all evidence before it.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel was not persuaded by Petitioner's contention that audio issues during his hearing before the IJ denied him due process, when the record did not demonstrate that the IJ prejudicially missed or misunderstood anything said during the hearing.

---

## COUNSEL

Osvaldo A. Vargas, Vargas Law Firm, West Covina, California, for Petitioner.

Shelley K.G. Clemens and Lauren L. Taiclet, Trial Attorneys; Kohsei Ugumori, Senior Litigation Counsel; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington D.C.; for Respondent.

# OPINION

R. NELSON, Circuit Judge:

Petitioner Raul Perez Cruz argues that the Board of Immigration Appeals (BIA) erred in denying his Convention Against Torture (CAT) claim because (1) the record compels a contrary conclusion, (2) the agency did not consider all the evidence before it, and (3) technological issues during his hearing before the Immigration Judge violated his due process rights. We deny his petition for review.

I

Raul Perez Cruz is a native and citizen of Mexico. In 2021, he pled guilty to money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) and was sentenced to 144 months' imprisonment and three years' supervised release. The Department of Homeland Security initiated removal proceedings against him. He conceded removability but sought asylum, withholding of removal, and CAT protection based on past experiences with cartels and fear of retaliation because of his purported cooperation with the United States government (the government).

A

Perez Cruz has an unfortunate history with the cartels. He was the frontman for "Los Dos de Nuevo Leon," a band well-known in northern Mexico after its hit single, "El Carrito." Perez Cruz's brother, Jose Guadalupe, was the band manager. In 2004, the band's tour bus was stopped by armed cartel members who held the band members hostage and threatened to kill them. The cartel members took the band members to a party and ordered them to perform until 3:00 am.

Cartel members instructed Perez Cruz never to tell anyone what happened and released the band. Perez Cruz never reported the incident to the police. Assuming it was an isolated incident, he continued to play "throughout all Mexico" afterward.

Perez Cruz claims that in 2009 he had another confrontation with the cartel. He and his brother Jose were stopped and surrounded by armed cartel members who threatened to kill them if they did not follow orders. Cartel members bound the brothers' hands, beat them for hours, and held them for three days. Perez Cruz suffered a broken nose and ribs. The cartel members said that Jose owed them money and that they would kill the brothers if not repaid.

The cartel eventually released the brothers. Perez Cruz claims he went to a medical clinic but did not present documents from the clinic because "we're trained not to go to a clinic." He did not explain who told him not to go to a clinic. And he did not report this incident to the police either.

For a while, Perez Cruz toured only in the United States but later continued to visit Mexico for short stays to perform, meet with Jose, and visit his mother. He visited Mexico, without incident, nearly 400 times after his second kidnapping.

Perez Cruz had another run-in with the cartels in 2018. Cartel members went to his ranch in Mexico when he was away and interrogated a ranch hand about his whereabouts. The ranch hand relayed to Perez Cruz the cartel's message that Perez Cruz would be killed if he set foot in Mexico again. Still, Perez Cruz visited Mexico again without incident.

### B

In 2018, Perez Cruz was arrested in the United States and indicted on various money laundering and drug-related charges. Before an Immigration Judge (IJ), Perez Cruz conceded removability and sought asylum, withholding, and CAT protection. He provided a written declaration, country condition evidence, and evidence of his status as a public figure.

Perez Cruz, his attorney, and attorneys from the government appeared via video before the IJ. At the hearing, the audio briefly cut out several times. Perez Cruz appeared to claim that another brother—not mentioned until this point and not mentioned in any record evidence—was kidnapped because of Perez Cruz's circumstances. Perez Cruz also claimed that he had cooperated with the government by divulging the names of Gulf Cartel members and the owners of the money he laundered. The government has not asked Perez Cruz to testify against cartel members, and he does not know if anyone was arrested based on his claimed cooperation. Perez Cruz believes the cartel knows about his government cooperation, and fears he will be targeted in Mexico because of it.

The IJ denied Perez Cruz's applications for relief. The IJ "reviewed the entire record . . . [and] considered all evidence in the record," but did "not completely recount the evidence and arguments" though he considered them. The IJ found Perez Cruz's testimony to be "generally credible," although "[t]here were multiple inconsistencies" in "his testimony . . . as well as between his testimony and his declaration."

The IJ denied Perez Cruz's asylum and withholding claims because he was convicted of a particularly serious

crime, money laundering under 18 U.S.C. § 1956. Because Perez Cruz was sentenced to 144 months in prison for money laundering in violation of § 1956, an aggravated felony under 8 U.S.C. § 1101(a)(43), he is statutorily ineligible for withholding of removal and asylum. *See* 8 U.S.C. § 1158(b)(2)(B)(i) (asylum); 8 U.S.C. § 1231(b)(3)(B) (withholding). Perez Cruz's aggravated felony conviction also means that he is statutorily ineligible for cancellation of removal, *see* 8 U.S.C. § 1229b, and so the IJ denied his application for cancellation of removal, too.

Perez Cruz's application for deferral of removal under the CAT was not statutorily barred, so the IJ addressed the merits of this claim. The IJ assumed that Perez Cruz was tortured by the cartel members in 2004 and 2009. Even so, the IJ denied deferral of removal under CAT because Perez Cruz did not show that he would suffer torture "with the consent or acquiescence of the Mexican government" if removed to Mexico. Perez Cruz also did not show that he could not relocate safely in Mexico.

Perez Cruz appealed the denial of his application for deferral of removal under the CAT to the BIA. He also asserted that technical difficulties in his hearing violated his due process rights. Perez Cruz did not challenge the IJ's denial of his applications for asylum, statutory withholding of removal, or cancellation of removal.

The BIA adopted and affirmed the IJ's decision. The BIA agreed with the IJ that the 2004 and 2009 incidents with the cartels while he was in the band did not constitute torture "at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity." Moreover, Perez Cruz's fear of future torture was "too speculative and non-particularized to satisfy the

stringent 'more likely than not' threshold." Finally, the BIA concluded that there was no due process violation. The BIA determined that technical difficulties did not impede the IJ's ability to understand relevant details. Nor did Perez Cruz's attorney object to the quality of the video and audio or clear up confusion when given the chance. Accordingly, the BIA concluded that the IJ did not err in denying deferral of removal under the CAT.

Perez Cruz timely petitioned this court for review.

## II

We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1252. We review both the IJ's and BIA's decisions because the BIA affirmed the IJ and cited *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994). *See Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022).

We review for substantial evidence whether Perez Cruz would more likely than not be tortured if returned to Mexico. *See Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010). Under the substantial evidence standard, findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it."). This standard is "extremely deferential." *B.R. v. Garland*, 26 F.4th 827, 835 (9th Cir. 2022) (quotation omitted). We review legal and constitutional questions de novo. *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012).

### III

Substantial evidence supports the agency's determination that Perez Cruz did not meet his burden to show that "it is more likely than not that [he] will be tortured upon return to" Mexico. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2010) (quotation omitted); *see also* 8 C.F.R. § 1208.16(c)(2). Nor does Perez Cruz satisfy his heavy burden to show that the agency ignored relevant record evidence. Finally, Perez Cruz fails to show any due process violation.

### A

The record does not compel the conclusion that Perez Cruz would more likely than not be tortured if removed to Mexico. Perez Cruz continuously traveled to Mexico after his encounters with the cartel. He returned to Mexico days after the 2009 incident, reentered Mexico nearly 400 times between 2009 and his arrest in 2018, and even returned to Mexico after his ranch hand was threatened in early 2018. He was not harmed on any of these visits. This substantial evidence supports the IJ's finding that Perez Cruz did not have a reasonable fear of future harm.

Substantial evidence also supports the IJ's finding that Perez Cruz failed to show that he could not safely relocate in Mexico. As the IJ noted, Perez Cruz safely toured all of Mexico and nothing happened to him outside the state of Tamaulipas, where the 2004 and 2009 cartel incidents occurred. *See Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 705 (9th Cir. 2022).

Perez Cruz's fear of retaliation for purportedly cooperating with the government does not compel a contrary finding. As the IJ noted, Perez Cruz did not submit evidence

of his cooperation, and his assertion that the cartel knew about his cooperation was speculative. Perez Cruz's basis for his fears is tenuous: supposedly, a government prosecutor told the attorney of a codefendant that Perez Cruz cooperated; the codefendant's attorney told the codefendant, and the codefendant told Perez Cruz's brother. Though none of these people had cartel ties, Perez Cruz asks us to infer that the cartel found out about his cooperation and will harm him. The IJ permissibly found that inference to be a stretch, and we are not compelled otherwise. The IJ also reasonably found that Perez Cruz's 144-month sentence did not point to government cooperation; the "substantial" length of the sentence does not suggest that Perez Cruz cooperated with the government to receive a lesser sentence.

Substantial evidence about country conditions in Mexico also supported the agency's findings. As the IJ noted, in 2019, the Mexican Federal Police (who Perez Cruz alleges were affiliated with the cartels who persecuted him), was disbanded and its assets were transferred to the National Guard. By constitutional amendment, responsibility for combating domestic criminal groups was transferred from the federal police to the military. Although issues remain, evidence shows that the military has effectively policed its own ranks. This substantial evidence supports the IJ's determination that Perez Cruz did not show a likelihood of being tortured by the cartels.

Finally, over 14 years have elapsed since the last direct incident with the cartel in 2009. *See Ruiz-Colmenares*, 25 F.4th at 751 (relying in part on the time that elapsed since an incident). That threat is temporally remote, and Perez Cruz has not heard from the cartels since 2009, though his ranch hand had an encounter with cartel members in 2018. *See id.* (relying on lack of further threats from the cartel). And

Perez Cruz's long sentence will put more time between the 2018 incident and his return to Mexico. *Id.* In sum, substantial evidence supports the agency's finding that Perez Cruz failed to show that he was more likely than not to be tortured upon return to Mexico.

## B

Perez Cruz also claims that the agency did not consider the full record when reaching its conclusion. He argues that the agency did not adequately consider (1) the country conditions, (2) evidence about Perez Cruz's repeated safe travel to Mexico, and (3) evidence about relocation. The government addresses only the second of these arguments. We have held that the agency is presumed to have reviewed the entire record. And the petitioner bears the burden to show that the agency did not consider specific portions of the record. The government does not bear the burden to rebut those claims. Perez Cruz has not pointed to anything in the record that shows the agency failed to consider all the evidence, so Perez Cruz has not overcome the presumption that the agency reviewed all evidence before it.

## 1

We have long recognized a presumption that the agency reviewed all relevant evidence submitted to it. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095–96 (9th Cir. 2000). Accordingly, a petitioner bears the burden to demonstrate that the agency did not consider all relevant evidence. *Id.* Consistent with this presumption, the agency need not "discuss each piece of evidence submitted," and if nothing in the record reveals that the agency did not consider all the evidence, a general statement that the agency considered all evidence before it shall suffice. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011).

This principle has its basis in the long-standing presumption of regularity. Courts have long presumed that "official acts of public officers, . . . in the absence of clear evidence to the contrary, . . . properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926). This is the "presumption of regularity," *id.* at 14, a "general working principle" that applies when we review agency action; and "clear evidence is usually required to displace it," *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004).

The presumption of regularity applies in the immigration context, as the presumption "normally attends" the Department of Homeland Security's actions. *See Biden v. Texas*, 597 U.S. 785, 811 (2022). We have held that the presumption also applies specifically to service of notices to appear. *B.R.*, 26 F.4th at 836.

We also apply the presumption of regularity to similar IJ and BIA proceedings. *See Larita-Martinez*, 220 F.3d at 1095–96. In *Larita-Martinez*, the petitioner claimed that the BIA "did not consider the supplemental evidence he filed on appeal" relating to his application for suspension of deportation. *Id.* at 1094–95. The petitioner "clothe[d] his argument in due process garb." *Id.* at 1095. In the asylum context, due process requires the agency to review all evidence before it. *Id.* We "embrace[d] the view of our sister circuits" that "an alien attempting to establish that the Board violated his right to due process by failing to consider relevant evidence must overcome the presumption that it did review the evidence." *Id.* at 1095–96. And the petitioner had "not rebutted the presumption that the Board considered" the full record. *Id.* at 1096.

The presumption of regularity applies in the CAT context as well.  As in asylum claims, CAT regulations also require the agency to consider all relevant evidence submitted on appeal.  *See* 8 C.F.R. § 1208.16(c)(3).  And as with a due process claim, under the presumption of regularity, we presume that the agency acted "properly and according to law" in reviewing the evidence before it.  *See F.C.C. v. Schreiber*, 381 U.S. 279, 296 (1965).

This tracks with our precedent.  After all, we have applied a similar presumption in the CAT context.  In *Gonzalez-Caraveo v. Sessions*, the petitioners "claim[ed] that, in assessing their CAT claim," the agency "failed to consider all evidence relevant to the possibility of torture." 882 F.3d 885, 894 (9th Cir. 2018).  The agency allegedly did not consider "general evidence of human rights violations in Mexico and . . . testimony regarding the murders of [the petitioners'] family members." *Id.*  But we held that "[t]here [wa]s no indication that the IJ or BIA did not consider all the evidence" because the record did not show that the IJ misstated or failed to mention critical evidence.  *Id.* at 894– 95.  While *Gonzalez-Caraveo* did not explicitly apply the presumption of regularity, it effectively did so.  Thus, the presumption of regularity applies when regulations require an agency to consider the entire record.

Given that the presumption of regularity applies here, "it is the petitioner's burden to show that the [agency] did not review the record when it considered the appeal." *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005) (applying this presumption to a CAT claim).  Presumptions carry "baggage." *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (en banc).  Here, that baggage is heavy, demanding that a petitioner present "clear, affirmative evidence" that the agency did not review the evidence before

it.  *Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1060 (9th Cir. 2021).

In *Cole*, we explained what a petitioner must do to overcome the presumption.  659 F.3d at 771–72.  A petitioner must identify something about the record which indicates it was not fully reviewed, such as indicators that the agency "misstat[ed] the record and fail[ed] to mention highly probative or potentially dispositive evidence."  *Id.* at 772; *accord Flores Molina v. Garland*, 37 F.4th 626, 638 (9th Cir. 2022).

Thus, a petitioner must satisfy two elements to establish that the agency did not consider all the evidence before it.  First, a petitioner must show what record evidence *in particular* was supposedly ignored or misstated by the agency.  *See Guam*, 11 F.4th at 1060.  This showing cannot be vague, nor can it gesture broadly toward swaths of evidence—it must be "clear" and "affirmative."  *Id.*

Second, a petitioner must *explain* why that evidence was not just material, but "highly probative or potentially dispositive."  *Cole*, 659 F.3d at 772.  So, for instance, a petitioner cannot satisfy this burden if "focus[ing] more closely" on a piece of evidence would be futile because "the BIA would reach the same decision."  *Najmabadi v. Holder*, 597 F.3d 983, 991 (9th Cir. 2010).  Moreover, our review of the agency's decision, including whether a petitioner overcame the presumption of regularity, must always take "due account of the rule of prejudicial error" and other "traditional administrative law principles."  *Zamorano v.*

*Garland*, 2 F.4th 1213, 1228 (9th Cir. 2021) (quotations and internal citations omitted).[1]

2

With this legal background in mind, we review Perez Cruz's claims that the agency failed to consider all the evidence. Perez Cruz argues that the agency did not consider (1) the country conditions, (2) evidence about Perez Cruz's repeated safe travel to Mexico, and (3) evidence about relocation. These claims lack merit.

The IJ stated that he had "reviewed the entire record" and "considered all evidence in the record, even if not explicitly mentioned" in the decision. The IJ elaborated that he had "considered all documentary and testimonial evidence in the record individually and in the collective," regardless whether such evidence was explicitly mentioned. We presume that these general statements suffice, unless Perez Cruz points to something in the record or the agency decisions that indicates that the agency failed to consider all the evidence. *See Cole*, 659 F.3d at 772. As we explain below, with respect to all three of his arguments, Perez Cruz has not shown that the agency failed to consider relevant evidence.

a

First, Perez Cruz claims that the agency ignored country conditions. Perez Cruz acknowledges that the agency

---

[1] *Cole* states indicia that a record was not fully reviewed "include" highly materially prejudicial misstatements or elisions of the record. 659 F.3d at 772. Regardless whether other indicia exist, the petitioner's burden always requires a showing of prejudicial error, *Zamorano*, 2 F.4th at 1228, and heightened materiality as envisioned in *Cole*, 659 F.3d at 772 (elisions or misstatements must be "highly probative or potentially dispositive").

considered evidence of "proactive measures taken by the government to combat corruption," but he contends that the agency did not "consider the deeper implications of such actions," without elaborating on the nature of those implications. He cites an entire government exhibit and directs us only to the table of contents. Perez Cruz's evidence of failure to consider country conditions is not "clear" because it is not specific. *Guam*, 11 F.4th at 1060. Citing a table of contents and a 67-page exhibit, without explaining what was specifically ignored, is not enough to identify and gauge the materiality of the purportedly ignored evidence. Thus, Perez Cruz has not overcome the presumption that the agency considered all the relevant evidence about country conditions.

Perez Cruz also cites a news article about the general state of cartel abuses in Mexico. But he does not explain how this article is material, especially given the agency's consideration of similar evidence. The IJ already addressed continued issues with the cartels and general abuses and corruption in Mexico, but found that Mexico's dissolution of the federal police along with its empowerment of the National Guard outweighed those considerations. *Supra* § III.A. The agency considered evidence about collusion between cartels and the Mexican government, but weighed it differently than Perez Cruz wanted. Where similar evidence has been considered, Perez Cruz fails to carry his burden of showing that the added evidence was "highly probative" or "potentially dispositive." *Cole*, 659 F.3d at 772. Cumulative record evidence cannot satisfy the presumption's high materiality requirement. And consideration of similar evidence would be futile because "the BIA would reach the same decision" in the end. *Najmabadi*, 597 F.3d at 991.

b

Perez Cruz next argues that the IJ ignored why he had visited Mexico and not been harmed by the cartels after 2009. He provides no record cites and does not elaborate on the reasons for his visits to Mexico. This is not "clear" and certainly does not overcome the presumption of regularity. *See Guam*, 11 F.4th at 1060. Perez Cruz fails to show specifically what evidence the agency purportedly ignored. Nor does Perez Cruz explain why the purportedly ignored evidence would have materially affected the agency's decision. So he fails to carry his burden.

c

Finally, Perez Cruz claims that the agency did not consider "the totality" of his circumstances when assessing the feasibility of safe relocation in Mexico. He argues that the agency "failed to grasp the implications of his prominent status and the omnipresent danger posed by cartels." He provides record cites for his prominent status but does not provide any for the omnipresence of cartels.

From the start, a generalized claim that the agency did not consider the totality of the circumstances will never overcome the presumption of regularity. Such an argument is definitionally not "clear." *Guam*, 11 F.4th at 1060. Instead, overcoming the presumption means showing what evidence in particular was ignored and explaining its relevance.

Perez Cruz makes no showing of specific evidence the agency ignored or why that evidence is relevant. As noted above, the agency grappled with the status of cartels in Mexico. And even Perez Cruz admits that the agency acknowledged his tour history. To overcome the

presumption that the agency considered all the evidence, Perez Cruz had to show that the agency misstated or failed to consider specific evidence, not simply that he disliked the weight the agency placed on certain evidence. *See Gonzalez-Caraveo*, 882 F.3d at 894 ("The IJ's statement that there was evidence in the record that showed the Mexican government was at times complicit in cartel work shows that the IJ did review the record, he was just not persuaded by it."). Thus, Perez Cruz fails to carry his burden as to this evidence.

*          *          *

Perez Cruz gestures broadly at the record and claims that the agency ignored his evidence. But the evidence he does identify was considered by the agency. And his general reference to other record evidence does not identify why any supposedly ignored evidence was material enough for him to carry his burden. In other words, Perez Cruz does not overcome the presumption that the agency reviewed all relevant evidence. He has not pointed to indicia of a failure to consider all the evidence, and so the IJ's general statement that it considered all record evidence suffices. If a petitioner makes an extraordinary argument—that government officials are acting extra-legally—they must satisfy their heavy burden to receive extraordinary relief. Perez Cruz fails to do so.

## C

Finally, Perez Cruz argues that audio issues in his hearing before the IJ prejudiced his claims, including his ability to convey to the IJ that his second brother was recently kidnapped by cartels in relation to the cartels' threats against him.

To succeed on such a due process claim, Perez Cruz must show error and substantial prejudice. *See Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020). "Whether a particular video-conference hearing violates due process must be determined on a case-by-case basis, depending on the degree of interference with the full and fair presentation of petitioner's case caused by the video conference, and on the degree of prejudice suffered by the petitioner." *Vilchez*, 682 F.3d at 1199–1200. Perez Cruz fails to show that the audio issues prejudiced him. *See id.*; *see also Aden v. Holder*, 589 F.3d 1040, 1047 (9th Cir. 2009).

Perez Cruz argues that there were many instances of the audio cutting out, which interrupted the interpreter during his hearing, and generally prejudiced him. That argument fails. The IJ ably grappled with all the facts in the record, and Perez Cruz does not demonstrate that the IJ prejudicially missed or misunderstood anything. *See Vilchez*, 682 F.3d at 1200.

Perez Cruz also argues that these audio issues led to confusion about his second brother's abduction. That argument fails too. The government asserts, and Perez Cruz does not meaningfully contest, that while audio issues arose in other parts of the hearing, none were present during the discussion of his previously unmentioned brother's kidnapping. Based on our review of the record, the IJ's confusion was not because of audio issues, but because of Perez Cruz unresponsively answering the IJ's questions about the ranch hand incident by referencing an unrelated incident about his second brother never mentioned elsewhere in the record. *See Aden*, 589 F.3d at 1047 (explaining that a defect in process must be the cause of the prejudice). The IJ's confusion is understandable as this brother and incident were not brought into evidence by Perez

Cruz's counsel, nor were they in Perez Cruz's affidavit to the IJ.

Further, after Perez Cruz's counsel entered all his evidence into the record, and after the government conducted cross-examination, his counsel later confirmed she had nothing else to add. She also did not mention Perez Cruz's second brother or his kidnapping in her closing statement. There is thus no reason to believe the IJ missed anything. And if there were, Perez Cruz's counsel was presented with ample opportunities to cure the defect. Perez Cruz had a fair hearing with an opportunity to be heard. As a result, he has no due process claim.

## IV

Substantial evidence supports the agency's findings. Perez Cruz fails to carry his heavy burden to show that the agency ignored any specific, material evidence. And Perez Cruz has no due process claim.[2]

**PETITION DENIED.**

---

[2] Because we deny his petition, Perez Cruz's motion to stay removal, Dkt. 2, is denied as moot.