**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JUAN RUIZ-COLMENARES,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent*.

No. 20-72672

Agency No.
A075-177-403

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 21, 2021[*]
Pasadena, California

Filed February 9, 2022

Before: Ryan D. Nelson and Lawrence VanDyke, Circuit
Judges, and Karen E. Schreier,[**] District Judge.

Opinion by Judge VanDyke

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Karen E. Schreier, United States District Judge for
the District of South Dakota, sitting by designation.

**SUMMARY**[***]

**Immigration**

Denying Juan Ruiz-Colmenares's petition for review of a decision of the Board of Immigration Appeals, the panel held that (1) it lacked jurisdiction to consider Ruiz-Colmenares's unexhausted challenge to his hearing notice; and (2) the agency's adverse credibility determination was supported by substantial evidence and Ruiz-Colmenares failed to carry his burden to succeed on his claim for deferral of removal under the Convention Against Torture.

Relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Ruiz-Colmenares argued that the agency lacked jurisdiction over his proceedings because his charging document, a Notice of Referral, failed to specify the time and date of his hearing. The panel concluded that it lacked jurisdiction to consider Ruiz-Colmenares's argument because he failed to raise it before the agency.

Ruiz-Colmenares had previously been deported three times, and in the processing of his present fourth deportation proceedings expressed for the first time a fear of returning to Mexico because he had been robbed and assaulted by police officers in Mexico after each of his prior three deportations.

The panel held that substantial evidence supported the immigration judge's adverse credibility determination based on inconsistencies and omissions within and between Ruiz-Colmenares's written, verbal, and documentary evidence

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

regarding what happened to him in Mexico and when. As to testimonial inconsistencies concerning dates, the panel wrote that even minor inconsistencies that have a bearing on a petitioner's veracity may constitute the basis for an adverse credibility determination. The panel explained that this type of evolving story is precisely what one would expect if a petitioner is fabricating or embellishing past harms, and it is eminently reasonable that the IJ would conclude that these changes reflected poorly on Ruiz-Colmenares's credibility. The panel further held that the agency properly considered and weighed Ruiz-Colmenares's failure to mention any fear of returning to Mexico, or the robberies, during his previous three deportation proceedings. The panel also held that the IJ reasonably concluded that Ruiz-Colmenares's failure to provide any corroboration could not rehabilitate his incredible testimony.

The panel held that even if the record compelled reversal of the agency's adverse credibility determination, substantial evidence would still support the agency's finding that Ruiz-Colmenares did not suffer past torture and does not face a particularized risk of future torture if returned to Mexico.

## COUNSEL

Alejandro Cordero Rothstein, The Matian Firm, Los Angeles, California, for Petitioner.

Jennifer A. Bowen, Trial Attorney; Anthony C. Payne, Assistant Director; Brian Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

VANDYKE, Circuit Judge:

Juan Ruiz-Colmenares (Petitioner) is a Mexican citizen who has illegally entered the United States multiple times, wherein he was convicted for a string of felonies. He has been deported back to Mexico three times. During the processing of his fourth deportation, Petitioner expressed (for the first time) a fear of returning to Mexico and alleged (also for the first time) that he had been robbed and assaulted by police officers in Mexico after each of his prior three deportations.

After finding Petitioner not credible, an Immigration Judge (IJ) rejected his sole claim for relief: deferral of removal under the Convention Against Torture (CAT). The Board of Immigration Appeals (BIA) affirmed the IJ's decision.[1] Petitioner now argues that (1) the agency lacked jurisdiction because his charging document omitted the time and date of his hearing; and (2) the agency erred in denying him CAT relief. Both arguments are unavailing.

Petitioner's jurisdictional argument is unexhausted because he failed to present it before the IJ or BIA. And the record does not compel reversal of the agency's decision to deny Petitioner's CAT claim. Petitioner's own testimony is the primary support for his claimed past harm, which he

---

[1] The agency also denied Petitioner's application for withholding of removal under the Immigration and Nationality Act (INA). Before the IJ, Petitioner conceded he was ineligible for withholding in light of his felony convictions that constituted "particularly serious crimes." Because of the particularly serious crime bar, Petitioner ultimately sought the only form of relief he was eligible to request: deferral of removal under CAT.

never raised during the processing of multiple prior deportations. And when he did finally raise such harms in conjunction with *this* deportation, he continuously altered his story about those harms in terms of the nature and timing of his injuries. Accordingly, the agency's adverse credibility determination is adequately supported by substantial evidence and no other evidence shows that he faces a particularized risk of torture, much less a risk that surmounts the fifty percent threshold required for CAT relief.

Pursuant to our jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

## I.  FACTUAL BACKGROUND

Petitioner has illegally entered the United States four different times and, after brief stays that resulted in multiple criminal convictions, was deported back to Mexico three times (in 1998, 2000, and 2001).[2]  Petitioner's fourth deportation proceeding was initiated in November 2015, when he claimed for the first time that he feared returning to Mexico because he was allegedly robbed and assaulted after each of his prior three deportations.

Petitioner provided inconsistent testimony regarding the extent and timing of his claimed injuries from the robberies in Mexico—from the time he gave his first recitation of the

---

[2] Petitioner's first three stays in the United States were riddled with aggravated felony convictions for drug and violent crimes. He obtained three felony convictions for domestic violence (in March 1996, July 1996, and September 1998), a felony conviction for the sale and transportation of cocaine (in July 1996), and a felony for the battery of a peace officer (in September 1998). Petitioner also was arrested several times between 1993 and 2001 for crimes ranging from grand theft auto, to parole violations, to narcotics possession and trafficking.

events in November 2015, to his written declaration in December 2016, to his amended declaration in December 2017, to his subsequent oral testimony before the IJ. The main theme of his story is that shortly after each of his prior three deportations he was robbed and assaulted near the border in Tijuana (where it appears Petitioner stayed temporarily as he prepared for his next entry into the United States). And in all three instances the perpetrators were primarily interested in whether Petitioner had money they could take.

1. *1998 Incident*

Shortly after Petitioner's first deportation in 1998, he claims that he was detained and assaulted by police officers who, when he failed to produce an ID, threw him in the back of a truck, beat him, detained him for three and a half days without charges, and stole his money and clothes. During his 2017 hearing before the IJ, the primary injury Petitioner recalled from this first incident resulted in his eyebrow being "busted [ ] open," along with "low blows to the ribs" and kidneys and blows to the back of his head. But those details were not included in any of his prior descriptions of the 1998 incident, which noted only that the officers "hit" or "punched" him in the face. In fact, the initial description of this first incident was significantly milder than his later recitations of the event, describing his injuries to the asylum officer as "[n]ot serious just bumps and bruises." A few months after the claimed incident, Petitioner made his second entry into the United States, where he was soon after arrested and convicted for his third domestic violence felony.

2. *2000 Incident*

Before the IJ, Petitioner claimed that about a week after his second deportation on May 9, 2000, he again encountered police officers who robbed him, but "just took [his] money that time" with no arrest or detention. But his earlier interview with the asylum officer included details from this second incident that were completely omitted from the IJ hearing, including that "his lip was busted open" and that he was taken to jail. About three weeks after this claimed incident, Petitioner made his third entry into the United States in June 2000 and was arrested a few months later for violating his parole.

3. *2001 Incident*

A few days after his third deportation on April 17, 2001, Petitioner claims that he was singled out by the police because he "looked clean" and was told to hand over his money (even though he had none at the time).[3] Whether or not Petitioner was physically injured in this third encounter, and if so, to what extent, is unclear from the record and his own inconsistent testimony. About a month after this claimed incident, Petitioner illegally made his fourth entry into the United States in 2001.

## II.  PROCEDURAL BACKGROUND

Petitioner's current deportation proceeding was initiated in November 2015, when for the first time he expressed a fear of returning to Mexico. Petitioner was interviewed by an asylum officer who found that he had a reasonable fear of

---

[3] Petitioner initially testified that the third incident happened around February or March of 2001, but the IJ pointed out that was impossible since he was not deported from the United States until April 17, 2001.

torture, and was detained by the Department of Homeland Security (DHS) until he posted bond on June 17, 2016.

On November 30, 2015, Petitioner received his charging document, a Notice of Referral to Immigration Judge, which specified the location of his upcoming hearing but noted the date and time were "[t]o be determined." Three weeks later, on December 21, 2015, Petitioner received a "Notice of Withholding-Only Hearing" that provided the remaining hearing details, specifying the time, date, and location of his upcoming hearing. Several hearing notices followed as Petitioner's hearing date was pushed further out; each notice provided updated hearing details. Petitioner does not dispute that he received all hearing notices (as reflected in the certificates of service), or that he attended all IJ hearings with his attorney, including the final merits hearing on December 18, 2017.

## A. IJ Hearings

Throughout the hearings, the IJ made multiple requests for additional supporting documents, including updated country reports, and provided Petitioner multiple opportunities to provide them. Petitioner failed to provide any updated country reports and the IJ took judicial notice of the State Department's 2016 Human Rights Report on Mexico (which, combined with the 2014 Human Rights Report, constitutes the entirety of the country conditions evidence in the record).

Despite having multiple family members locally situated in Pasadena who Petitioner claimed were aware of the incidents he described, none of them came to testify or offered a declaration on his behalf. Petitioner provided no explanation for why the family members he claimed could corroborate his story, didn't. The IJ also sought out other

means of confirming Petitioner's testimony, such as medical records or photographs. But Petitioner provided nothing— he had not sought medical attention for any of his claimed injuries, nor had he taken any photographs.

As outlined above, Petitioner's description of all three robberies morphed before the IJ. The first incident grew significantly more serious from the relatively mild "bumps and bruises" described in his asylum interview to the busted-open eyebrow and bruising of the ribs, kidney, and head later recounted to the IJ. The second incident was downplayed in his testimony before the IJ, completely omitting the physical harm or busted-open lip described in his asylum interview. And Petitioner testified that the third incident occurred in February or March of 2001, even though he had not been deported from the United States until April 17, 2001. Petitioner also repeatedly denied knowing why he was targeted for the robberies, or if he would be targeted again in the future.

## B.  IJ Decision

The IJ denied Petitioner's applications for relief, relying on the omissions and inconsistencies described above to conclude that he was not credible. The IJ further explained that she would deny Petitioner's applications for relief even if she had found his testimony credible because the evidence (including the country conditions reports) failed to show that he faced a particularized risk of torture that was markedly different than that faced by the general population in Mexico.

## C.  BIA Decision

Citing *Matter of Burbano*, 20 I&N Dec. 872 (BIA 1994), the BIA adopted and affirmed the IJ's denial of Petitioner's applications.  Considering the totality of the evidence before the IJ, the BIA concluded that the adverse credibility determination was not "clearly erroneous" and was properly based on material inconsistencies and omissions between Petitioner's testimonial and documentary evidence and a lack of corroborating evidence.  The BIA also agreed that Petitioner failed to establish eligibility for CAT relief independent of his own non-credible testimony.  This petition followed, where Petitioner now argues that the agency lacked jurisdiction and erred in denying him CAT relief.

## III.  STANDARD OF REVIEW

"Where, as here, the BIA cites *Burbano* and also provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions."  *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011).  We "review questions of law de novo" and the agency's "factual findings for substantial evidence."  *Chavez-Garcia v. Sessions*, 871 F.3d 991, 995 (9th Cir. 2017).  An adverse credibility determination is a factual finding reviewed for substantial evidence. *Mukulumbutu v. Barr*, 977 F.3d 924, 925 (9th Cir. 2020).  We also review the denial of CAT relief for substantial evidence.  *Guo v. Sessions*, 897 F.3d 1208, 1212 (9th Cir. 2018).  "Under the substantial evidence standard, administrative findings of fact are conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary."  *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (emphasis added) (citation and quotation marks omitted).

## IV.  DISCUSSION

### A. Petitioner's Jurisdictional Argument Is Unexhausted.

Petitioner argues, for the first time on appeal, that the agency lacked jurisdiction because his charging document failed to specify the time and date of his hearing, noting instead that those details were "[t]o be determined."  In support of his argument, Petitioner relies primarily on *Pereira*, in which the Supreme Court answered a "narrow question" not presented in this case: the effect of deficiencies in a Notice to Appear (NTA) on the stop-time rule.  *See Pereira v. Sessions*, 138 S. Ct. 2105, 2109–11 (2018).  We lack jurisdiction to consider Petitioner's argument because it was not raised before the agency.  *See Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) ("petitioner's failure to raise an issue before the BIA generally constitutes a failure to exhaust, thus depriving this court of jurisdiction to consider the issue") (per curiam).

### B. Substantial Evidence Supports the Denial of CAT Relief.

To qualify for deferral of removal under CAT, Petitioner had to show (1) that he would "more likely than not" be tortured if removed to Mexico, and (2) that the torture would be inflicted with government acquiescence.  8 C.F.R. §§ 208.16(c)(2);  208.18(a)(1).  Substantial evidence supports the agency's adverse credibility determination and, without his testimony, the remaining evidence in this case falls short of demonstrating that Petitioner would more likely than not be tortured with government acquiescence upon return to Mexico.  And even if the record compelled reversal of the agency's adverse credibility determination (which it does not), substantial evidence would still support the

agency's finding that Petitioner did not suffer past torture and does not face a particularized risk of future torture if returned to Mexico.

## 1. The Adverse Credibility Determination Is Adequately Supported.

Substantial evidence supports the agency's adverse credibility determination. Layered on top of the deferential standard of review we apply to the review of immigration decisions, the REAL ID Act particularly restricts this court's review of an adverse credibility determination. *See Kaur v. Gonzales*, 418 F.3d 1061, 1064 n.1 (9th Cir. 2005). And it gives wide latitude to the trier of fact in making credibility determinations, considering the totality of circumstances and all relevant factors, including:

> [T]he consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . , without regard to whether an inconsistency . . . goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

Accordingly, "only the most extraordinary circumstances will justify overturning an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010) (quoting *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005)). The inconsistencies and

omissions identified by the IJ within and between Petitioner's written, verbal, and documentary evidence regarding what happened to him in Mexico and when more than adequately support the agency's factual determination as to Petitioner's lack of credibility.

Petitioner first contends that the IJ improperly based its adverse credibility determination on speculation and conjecture when he was unable to explain why he failed to mention the robberies or any fear of returning during his previous three deportation proceedings.  He essentially argues that the IJ should have filled any omissions or viewed any inconsistencies in his testimony with only the best assumptions (suggesting in his brief that perhaps in his prior deportations he did not know that he could disclose his fear or perhaps he did not yet have a fear of returning to Mexico). But that is not how the agency, especially after the REAL-ID Act, is required to assess credibility.

Congress has afforded the agency wide discretion in weighing the sufficiency, credibility, and persuasiveness of a petitioner's testimony. *Garland v. Dai*, 141 S. Ct. 1669, 1680–81 (2021).  And in making those determinations the IJ is not obligated to extend the petitioner a presumption of total credibility or the benefit of every doubt. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016) ("Under the REAL ID Act, there is no presumption that [a petitioner] is credible . . . ." (quotation mark omitted)).

When directly asked why he previously expressed no fear of returning to Mexico, Petitioner simply responded that he didn't know.  Petitioner's failure to plausibly explain why he never mentioned any fear of returning to Mexico or any of the claimed robberies and assaults following prior deportations is significant and was properly considered and

weighed by the agency in making its adverse credibility determination.

Petitioner also claims that his testimonial inconsistencies with respect to dates were "minor," and should have been overlooked by the agency.   But the timeframes and circumstances surrounding when Petitioner claimed he was robbed—the only particularized basis offered to support a risk of future torture in Mexico—changed constantly and significantly.  The agency did not improperly consider those inconsistencies in making its adverse credibility determination because "even minor inconsistencies that have a bearing on a petitioner's veracity may constitute the basis for an adverse credibility determination." *Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011).  This type of evolving story is precisely what one would expect if a petitioner is fabricating or embellishing past harms, so it is eminently reasonable that the IJ would conclude these changes reflected poorly on Petitioner's credibility.  *See Singh v. Holder*, 638 F.3d 1264, 1270 (9th Cir. 2011) ("If the person cannot tell substantially the same story twice in substantially the same way, that suggests a likelihood that the story is false.").

The most recent of the three alleged robberies (of which Petitioner should have had the clearest and most consistent recollection) occurred in Mexico in 2001.  Petitioner initially claimed it occurred in April of 2001 (in his declaration), but then reversed course in his hearing before the IJ, claiming it occurred in February or March of 2001.  The IJ noted that the timeline was physically impossible because Petitioner was not deported from the United States until April 17, 2001.

Petitioner also argues the IJ failed to acknowledge the specificity provided in his testimony.  But to the contrary, the IJ considered the details provided in Petitioner's

testimony and relied on the inconsistencies in those details in finding him not credible.  These are valid and specific reasons for issuing an adverse credibility determination.  *See Shrestha*, 590 F.3d at 1044 (requiring the IJ to "provide specific and cogent reasons in support of an adverse credibility determination") (citation omitted); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii).

And contrary to Petitioner's assertion, omissions can certainly form the basis of an adverse credibility determination—as they did here.  *Iman v. Barr*, 972 F.3d 1058, 1068 (9th Cir. 2020) ("[O]missions are probative of credibility to the extent that later disclosures, if credited, would bolster an earlier, and typically weaker, asylum application.").  Petitioner's biggest omission (which he never explained) is why he never disclosed his fear or the robberies during previous deportations.  But he also initially omitted important details related to his injuries—including that his eyebrow was allegedly busted-open wide enough that he should have received stitches.  This type of later embellishment reflects poorly on a petitioner's credibility.

Finally, Petitioner claims that he was not afforded an opportunity to provide corroborating evidence.  That is not true.  Review of the hearing transcripts reveals multiple instances where the IJ provided Petitioner with opportunities to submit additional evidence and encouraged him to do so.  The agency reasonably concluded that Petitioner's failure to provide any corroboration could not rehabilitate his incredible testimony.  *See Mukulumbutu*, 977 F.3d at 927 ("Because the IJ found [the petitioner's] testimony not credible, the IJ was not required to give [the petitioner] notice and an opportunity to provide additional corroborating evidence."); *Wang v. Sessions*, 861 F.3d 1003, 1005 (9th Cir. 2017) ("Because the IJ's adverse credibility

determination was supported by substantial evidence, and because the IJ had no obligation to give [petitioner] an opportunity to provide additional evidence, we deny the petition.").

Under the appropriate standard of review, the agency's adverse credibility determination in this case is supported by substantial evidence. And without his testimony, the only evidence Petitioner musters in support of his CAT claim is generalized country conditions evidence, which falls short of making the particularized and individual showing of an "extraordinary circumstance[]" necessary to overturn the agency's decision. *Silva-Pereira*, 827 F.3d at 1185 (citation omitted).

## 2. Even If Petitioner Had Testified Credibly, the Agency's Denial of CAT Relief Is Supported by Substantial Evidence.

Finally, even if the agency had weighed the credibility determinations differently and credited Petitioner's testimony, the combination of his testimony and the non-testimonial evidence still falls short of demonstrating the particularized and more-likely-than-not threat of future torture needed to obtain CAT relief.

Evidence of past torture is relevant (though not alone sufficient) in assessing a particular petitioner's likelihood of future torture. *See Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001). Petitioner offered no evidence of past torture. Even the most egregious version of his varying testimony amounts to three instances of robbery that resulted in a three-day detainment in police custody and temporary bruises, none of which necessitated medical treatment. While certainly not something anyone would want to experience, the incidents do not rise to the level of torture,

which is reserved for only the most "extreme and prolonged cruel and inhuman treatment."  8 C.F.R. § 1208.18(a)(2).

Petitioner hasn't received a single threat while in the United States and, combined with the twenty-year distance between his last incident and the present day, there is no evidence that he currently faces any particularized risk of harm.  His fear of returning to Mexico seems to have grown with every year he remained in the United States, not because of any individualized or particularized threat *he* may face upon returning, but because of the general reports of corruption and cartels in his home country.   This is understandable but fails to meet the high bar for CAT relief.

Petitioner gave varying explanations throughout his deportation proceeding of why he was targeted in the three robberies (because he looked "clean" or dressed "nice," lacked a Mexican ID, or spoke a different dialect of Spanish).  But even assuming everything Petitioner said was true, the common thread to the incidents is that Petitioner was a target of random robberies because he appeared to have money and was lingering in a border town as he prepared for his next entry into the United States.  There is no evidence that these instances of general crime (which deescalated in severity) are likely to escalate to a more serious level of persecution, much less torture.

Petitioner may have a legitimate fear of being robbed or assaulted a fourth time.  But he has offered no evidence showing he faces any particularized risk of torture (or petty theft or police threats) higher than that faced by all Mexican citizens.   And the country conditions evidence the IJ considered—while acknowledging corruption in the police force and some occasions where individuals were harmed in police custody—do not come close to establishing that the average Mexican citizen (or even the average Mexican

citizen hanging out in a border town) faces a greater-than-fifty-percent chance of being tortured.  Petitioner claims the agency didn't properly consider the country conditions evidence, but it did; that evidence just does not push him past the more-likely-than-not threshold needed for CAT relief. Petitioner had multiple opportunities to bolster the country reports with other evidence, particularized or general, showing that he has a greater risk than the general population.  But he never did.

Even if Petitioner was a credible witness, the agency did not err in concluding that Petitioner is not eligible for CAT relief.  *See* 8 C.F.R. § 1208.16(c)(2); *Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008) (per curiam) (determining that the State Department reports "do not indicate that [petitioner] would face any particular threat of torture beyond that of which all citizens of  Nepal are at risk"); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam) (determining that generalized evidence of violence and crime in Mexico was not particular to petitioners and was insufficient to establish CAT eligibility); *Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1230 (9th Cir. 2016) ("Where Petitioners have not shown they are any more likely to be victims of violence and crimes than the populace as a whole in Mexico, they have failed to carry their burden [under CAT].").

## V.  CONCLUSION

We lack jurisdiction to consider Petitioner's unexhausted challenge to the hearing notice.  The agency's adverse credibility determination is supported by substantial evidence and the agency properly concluded that Petitioner failed to carry his burden to succeed on his CAT claim.

The petition for review is therefore **DENIED**.[4]

---

[4] Petitioner's motions for stay of removal are also **DENIED**.