NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 14 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AVETIK GRIGORYAN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    17-70391

Agency No. A088-483-066

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 7, 2022[**]
Seattle, Washington

Before:  CLIFTON and BUMATAY, Circuit Judges, and SEEBORG,[***] District
Judge.

Avetik Grigoryan, a native and citizen of Armenia, petitions for review of a

decision by the Board of Immigration Appeals upholding the immigration judge's

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Richard Seeborg, Chief United States District Judge
for the Northern District of California, sitting by designation.

denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review for substantial evidence the agency's adverse credibility determinations and its denials of asylum, withholding of removal, and CAT relief. *Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017). We deny the Petition.

The BIA's adverse credibility determination was supported by substantial evidence in light of "specific and cogent reasons" offered by the BIA. *Manes v. Sessions*, 875 F.3d 1261, 1263 (9th Cir. 2017) (per curiam).

First, Grigoryan gave a shifting account regarding his decision to apply for asylum. Grigoryan initially testified that his fear of returning to Armenia and his decision to apply for asylum did not arise until September 2007—several months after his arrival in the United States—when his sister called and speculated that he could be arrested if he returned to the country. But when the IJ pressed Grigoryan to address a logical inconsistency in this account, Grigoryan revised his story, asserting that he "always" feared returning to Armenia, but did not decide to apply for asylum until March 2008, after several protesters were killed during a demonstration in the country. This "evolving story" as to the "timeframe[] and circumstances" in which Grigoryan first feared returning to Armenia and decided to apply for asylum casts doubt on the veracity of his account, and thus, it was "reasonable that the IJ would conclude these changes reflected poorly on [his]

2

credibility." *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 749–50 (9th Cir. 2022).

Second, Grigoryan gave an evolving account regarding a photograph he had submitted as evidence. Grigoryan initially testified that the submitted photograph was taken *by him* shortly after he was released from police custody in May 2007. He separately confirmed that there "was no snow" and the trees had "bloomed" by that time of year in Armenia. But when asked to explain why the photograph shows a snow-covered road lined with leafless trees, Grigoryan gave a new account of the photograph's provenance, asserting that his wife had taken the photograph sometime in winter after the original photograph was lost. Grigoryan's initial statement thus conflicted with the documentary evidence itself, an inconsistency that supports an adverse credibility determination. *See Rodriguez-Ramirez v. Garland*, 11 F.4th 1091, 1093 (9th Cir. 2021) (per curiam). Given its relevance to Grigoryan's claim, "even minor issues with the [photograph]" can support an adverse credibility determination. *Manes*, 875 F.3d at 1265.

Third, the IJ had to press Grigoryan repeatedly for a clear answer as to when he first feared returning to Armenia; how the Armenian authorities destroyed his farmland; why he did not photograph this alleged destruction; and why he would send his wife back to take photographs in an area where he feared for her safety. Thus, "[t]he [a]gency provided numerous instances of [Grigoryan's] evasiveness and non-responsiveness when answering the IJ's questions regarding" various

topics of relevance to his claim. *Lalayan v. Garland*, 4 F.4th 822, 839 (9th Cir. 2021). The IJ also repeatedly warned Grigoryan that he was being unresponsive and instructed him to answer the questions directly—warnings that provided Grigoryan "fair notice of the IJ's observation of evasiveness and non-responsiveness." *Id.*

Fourth, Grigoryan could not answer basic questions about Armenian politics and was visibly uncomfortable when this topic was raised. That Grigoryan could not correctly identify the winner of the 2008 Armenian presidential election, let alone say whether the president had changed as a result of the election, casts doubt on his account of political involvement. *See Singh v. Ashcroft*, 367 F.3d 1139, 1143 (9th Cir. 2004). Moreover, in noting that Grigoryan appeared "stunned and confused" and was taking a long time to answer, the IJ adequately "point[ed] out the noncredible aspects of the petitioner's demeanor," *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010), and provided "specific, first-hand observations—precisely the kind of credibility cues that are the special province of the factfinder[,]" *Manes*, 875 F.3d at 1263.

In light of Grigoryan's inconsistent accounts, unresponsive testimony, and the IJ's demeanor findings, substantial evidence supports the agency's adverse credibility determination. *See, e.g.*, *Rodriguez-Ramirez*, 11 F.4th at 1093–94. Moreover, given the inconsistencies and reliability issues raised by Grigoryan's

documentary evidence, substantial evidence also supports the agency's determination that these documents "were not sufficient to rehabilitate [his] testimony." *Garcia v. Holder*, 749 F.3d 785, 791 (9th Cir. 2014).

Because the agency's adverse credibility determination was supported by substantial evidence, and Grigoryan did not provide sufficient corroborating evidence, he cannot satisfy his burden of proving eligibility for asylum or withholding of removal. *See Mukulumbutu v. Barr*, 977 F.3d 924, 927 (9th Cir. 2020). Although "[a]n adverse credibility determination does not, by itself, necessarily defeat a CAT claim[,]" when a petitioner is found not credible, we will reverse a BIA decision denying CAT protection only if there is other evidence of torture that compels the conclusion that the petitioner is more likely than not to be tortured. *Lalayan*, 4 F.4th at 840 (citation omitted). Here, the country condition report for Armenia falls short of compelling the conclusion that Grigoryan *in particular* would face a threat of torture if he returns to the country. *Cf. Mukulumbutu*, 977 F.3d at 928. Because there is no objective evidence in the record that would compel us to conclude that Grigoryan faces a particularized risk of torture if he were to return to Armenia, substantial evidence also supports the BIA's denial of his claim for CAT relief.

**PETITION FOR REVIEW DENIED**.