NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 28 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARLVINE NKEMASONG
ASONGAKAP,

                    Petitioner,

    v.

MERRICK B. GARLAND, Attorney
General,

                    Respondent.

No.    21-431

Agency No. A213-189-689

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 18, 2023
San Francisco, California

Before:  VANDYKE and SANCHEZ, Circuit Judges, and VRATIL,** District
Judge.

Petitioner Marlvine Nkemasong Asongakap seeks review of a Board of

Immigration Appeals (BIA) decision affirming the decision of the Immigration

Judge (IJ) denying asylum, withholding of removal, and protection under the

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Kathryn H. Vratil, United States District Judge for the District of
Kansas, sitting by designation.

1

Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

Where, as here, "the BIA issues its own decision but relies in part on the immigration judge's reasoning, we review both decisions." *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 702 (9th Cir. 2022) (internal quotation omitted). We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022). To overturn the agency's factual findings, a petitioner must show that "any reasonable adjudicator would be *compelled* to conclude to the contrary." *Id.* (emphasis in original) (quotation omitted)

*First*, Asongakap argues that the agency ignored portions of the record. Although it is true that the agency must consider the entire record, that "does not mean that the [agency] must individually identify and discuss every piece of evidence in the record." *Hernandez v. Garland*, 52 F.4th 757, 770 (9th Cir. 2022). Instead, this court presumes that the agency reviewed the entire record and issued its decisions accordingly. *Id.* at 771. That presumption can be overcome in some circumstances, but Asongakap has not overcome it here. Sufficient indicia show that the agency below considered the total record. *See Najmabadi v. Holder*, 597 F.3d 983, 990–91 (9th Cir. 2010) (concluding that the agency "adequately considered" the record even though it "did not directly reference" certain evidence).

*Second*, the IJ denied asylum and withholding because it found that Asongakap failed to establish a nexus between any past or feared harm and a protected ground. The BIA affirmed on that same ground. For both claims, a petitioner must prove a causal nexus between one of his statutorily protected characteristics and either past harm or an objectively tenable fear of future harm. *See Garcia v. Wilkinson*, 988 F.3d 1136, 1143 (9th Cir. 2021); *Flores-Vega v. Barr*, 932 F.3d 878, 887 (9th Cir. 2019). Asongakap does not show that agency lacked substantial evidence for these determinations.

The agency found that the Amba Boys harmed Asongakap for monetary reasons and that the harm lacked a nexus to a protected ground. Asongakap argues that the Amba Boys "could [have] seen" his violation of the "separatists' lockdown policy" as indicating a lack of support for their cause. But he does not provide evidence compelling the conclusion that the Amba Boys had in fact imputed a political opinion to him because of his violation, or that the Amba Boys harmed him because of an imputed political opinion. Asongakap thus fails to show that the agency's finding lacked substantial evidence. *See INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992).

The agency also found that the Cameroonian authorities detained and interrogated Asongakap because they sought to investigate the Amba Boys. Asongakap contends that this investigation was illegitimate and that, in addition to

3

their investigative motivation, the authorities could have also been motivated by Asongakap's nationality and a political opinion they imputed to him. The only direct evidence of the Cameroonian authorities' motivation for detaining and questioning Asongakap, however, supports the agency's finding that the authorities were motivated by their desire to investigate the kidnapping. And the remaining evidence, regarding the conditions in Cameroon generally, does not compel any conclusion about the particularized motivations of the officials involved in Asongakap's detention and interrogation. The record thus does not compel a different conclusion than that reached by the agency: that the authorities' motive was investigatory.

*Third*, the agency found that Asongakap failed to show it was more likely than not that he would suffer torture if he returned to Cameroon. Asongakap has not shown that this finding lacked substantial evidence. "For CAT relief, the alien must prove that it is 'more likely than not that he or she would be tortured if removed to the proposed country.'" *Barajas-Romero v. Lynch*, 846 F.3d 351, 361 (9th Cir. 2017) (quoting 8 C.F.R. § 208.16(c)(2)). "All evidence relevant to the possibility of future torture is to be considered, including," inter alia, evidence of past torture and evidence of human rights violations in the country of removal. *Tzompantzi-Salazar*, 32 F.4th at 704.

Asongakap contends he suffered past torture when the Cameroonian authorities harshly interrogated him. Although the Cameroonian authorities' actions

were reprehensible, the agency found that these acts did not amount to torture and the evidence does not compel a different conclusion. *See, e.g.*, *Vitug v. Holder*, 723 F.3d 1056, 1060, 1066 (9th Cir. 2013); *Ahmed v. Keisler*, 504 F.3d 1183, 1188–89, 1201 (9th Cir. 2007). Nor does Asongakap's other evidence compel the conclusion that he will more likely than not suffer torture if returned to Cameroon. The country conditions evidence indicates that the Cameroonian government oppresses Anglophone citizens, but it does not show that Asongakap faces a particularized risk of torture in Cameroon. *See Tzompantzi-Salazar*, 32 F.4th at 706–07 (concluding "the evidence fails to show that Petitioner faces a particularized, ongoing risk of future torture"); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010). Nor do the threats Asongakap's relatives received against him from Cameroonian authorities, the fact that the authorities know the address for one of his family's residences, or Asongakap's contention that the Cameroonian authorities possess his biometrics compel the conclusion that he will more likely than not suffer torture upon his return to Cameroon.

**PETITION DENIED.**