NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DOLORES BAUTISTA MARTIN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 18-73403

Agency No. A209-162-571

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 8, 2024[**]
Seattle, Washington

Before: CLIFTON, FISHER,[***] and M. SMITH, Circuit Judges.

Dolores Bautista Martin petitions for review of the Board of Immigration

Appeals' (BIA's) decision denying her application for asylum, withholding of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. AR P. 34(a)(2).

[***] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

removal, and protection under the United Nations Convention Against Torture (CAT) on her own behalf and on behalf of her son, N.I.B.M. On June 17, 2020, we granted the parties' joint request to hold this matter in abeyance pending resolution of Bautista Martin's second motion to reopen her case before the BIA. On April 30, 2024, Bautista Martin advised the Court that the BIA had denied her motion.[1] We have jurisdiction under 8 U.S.C. § 1252(a), and this matter is ripe for resolution. For the reasons set forth below, we deny the petition for review.[2]

---

[1] Bautista Martin petitioned for review of the BIA's adverse decision on her motion to reopen, but the Court dismissed that petition on January 25, 2024 for failure to prosecute. Relatedly, Bautista Martin filed her Supplemental Brief on May 23, 2024. In that brief, her attorney noted that his Spanish-speaking colleague passed away in 2022 and that he had since "decided to withdraw from immigration practice." He tells us that he "advised Ms. Bautista of that fact and advised her to seek alternative counsel." On the record before us, we lack sufficient information to determine whether counsel complied with relevant rules of professional conduct in seeking to withdraw from this representation; however, the Court reminds counsel, as well as other attorneys who assume representation of a client who undertakes an appeal, of their duty to clearly establish the scope of their representation before relinquishing responsibility for a matter. *E.g.* Wash. R. Prof'l Conduct 1.3 cmt. 4.

[2] "Where, as here, the BIA reviewed the [Immigration Judge's (IJ's)] factual findings for clear error, and reviewed de novo all other issues, our review is 'limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted.'" *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (quoting *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006)). We review the BIA's legal conclusions de novo and factual findings for substantial evidence. *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022). Substantial evidence supports a finding unless any reasonable adjudicator, reviewing the record, "would be *compelled* to conclude to the contrary." *Id.* (quoting *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006)).

2

1. Turning first to Bautista Martin's claim for asylum, we agree with the BIA that she has not established a nexus between her membership in a particular social group (PSG) and her alleged persecution. *See Lkhagvasuren v. Lynch*, 849 F.3d 800, 802 (9th Cir. 2016) (per curiam) (petitioner has the burden to prove there is a nexus between the persecution and her PSG). The BIA expressly addressed just one PSG: "indigenous Guatemala [sic] women who are at a high risk of femicide." Nothing in the record shows that the incidents to which Bautista Martin testified bore any nexus to her identity as a Guatemalan woman at risk of femicide. Instead, both events appear to have been motivated by her attackers' desire to locate her husband and obtain money from him. And, as we have said, "harassment by criminals motivated by theft . . . bears no nexus to a protected ground." *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010).

The BIA also "affirm[ed] the . . . Immigration Judge's decision as [Bautista Martin] did not meet her burden of establishing a nexus between her fear of harm in Guatemala and *any* protected ground under the [Immigration and Nationality] Act, including . . . membership in a cognizable particular social group" (emphasis added). So, to the extent the BIA adopted the IJ's findings about every PSG Bautista Martin has raised, we turn to the IJ's reasoning. First, he correctly concluded that—even if "persons related to [Bautista Martin's] husband" were a cognizable PSG, "that was not a reason why she was harmed." The IJ was right;

3

there is no evidence in the record suggesting that Bautista Martin was targeted merely because she was related to her husband. *See Santos-Ponce v. Wilkinson*, 987 F.3d 886, 890–91 (9th Cir. 2021) (concluding that "[w]hile [the petitioner's] uncle was killed by gang members, the record does not contain any evidence that his uncle's membership in the . . . family was one central reason or even a reason that the gang killed him").

Much the same can be said for Bautista Martin's contention that she was attacked because of her Mayan race, as the record reveals no evidence of racial discrimination. It follows that a reasonable factfinder would not be compelled to find that Bautista Martin's race was "one central reason" for her persecution. *Barajas-Romero v. Lynch*, 846 F.3d 351, 358, 360 (9th Cir. 2017). Her asylum claim accordingly fails, as she has not shown that she was persecuted because of her membership in a cognizable PSG.

2. We turn next to the BIA's denial of Bautista Martin's request for withholding of removal. To show eligibility for withholding of removal under the INA, an applicant bears the burden of proving that her "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). To overcome that burden, an applicant must show a "clear probability" of persecution because of a protected ground. *I.N.S. v. Stevic*, 467 U.S.

4

407, 429–30 (1984). But "[t]he 'clear probability' standard for withholding is a more stringent burden of proof than the standard for asylum," *Garcia v. Wilkinson*, 988 F.3d 1136, 1146 (9th Cir. 2021), and so—because Bautista Martin cannot succeed on her asylum claim—her withholding claim necessarily fails.

3. Finally, we conclude that substantial evidence supports the BIA's denial of relief under the CAT. To establish eligibility for a grant of withholding or deferral of removal under the CAT, a noncitizen must show "that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). For purposes of the CAT, torture must be "*inflicted by*, *or at the instigation of*, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (emphasis added). Here, there is no sign that any public official acquiesced to Bautista Martin's allegations of torture. While she reported the attack to the local security committee, and they were apparently unable to do anything because her assailants were masked, that alone is not enough to compel a conclusion contrary to the BIA's. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) (reasoning that a decision by police not to investigate attack by masked men "because they lacked sufficient information d[id] not compel the conclusion that the police acquiesced in the attack, and therefore d[id] not support [the petitioner's] claim that it [was] more likely than not the police

5

w[ould] acquiesce in any future attacks if she [were] return[ed] to Guatemala").

Bautista Martin's claim for CAT relief thus fails.

The petition is **DENIED**.