
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SURINDER SINGH, | No. 16-70710 |
| Petitioner, | Agency No. A099-912-112 |
| v. | |
| TODD BLANCHE, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 11, 2026[**]
San Francisco, California

Before: S.R. THOMAS and MILLER, Circuit Judges, and BLUMENFELD,
District Judge.[***]
Partial Concurrence and Partial Dissent by Judge Miller.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Stanley Blumenfeld, Jr., United States District Judge
for the Central District of California, sitting by designation.

Petitioner Surinder Singh petitions this Court for review of a decision by the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252. Because the parties are familiar with the history of the case, we need not recount it here.

"In reviewing the BIA's decisions, we consider only the grounds relied upon by that agency." *Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021). Where as here "the BIA adopted and affirmed the [IJ]'s decision," "[w]e. . . look through the BIA's decision and treat the IJ's decision as the final agency decision for purposes of this appeal." *Tamang v. Holder*, 598 F.3d 1083, 1088 (9th Cir. 2010) (citation modified).

We review factual determinations by the BIA, including those establishing "eligibility for asylum, withholding of removal, and protection under CAT," for substantial evidence. *Hussain v. Rosen*, 985 F.3d 634, 641–42 (9th Cir. 2021).

I

"To be eligible for asylum, a petitioner has the burden to demonstrate a likelihood of persecution or a well-founded fear of persecution on account of race,

2

religion, nationality, membership in a particular social group, or political opinion." *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021) (citation modified). "To be eligible for withholding of removal, the petitioner must discharge this burden by a 'clear probability.'" *Id.* at 1059–60. If, as is true here, the immigrant has successfully demonstrated that they have suffered past persecution, the burden then falls upon the government to show by a preponderance of the evidence that the immigrant does not have a well-founded fear of future persecution. *Deloso v. Ashcroft*, 393 F.3d 858, 863–64 (9th Cir. 2005) (as amended). This can be done by showing the immigrant could relocate within their country of origin. *See Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004). "For purposes of asylum and withholding of removal, assessing Petitioner's ability to relocate consists of two steps: (1) whether [he] could relocate safely, and (2) whether it would be reasonable to require [him] to do so." *Rodriguez Tornes v. Garland*, 993 F.3d 743, 755 (9th Cir. 2021) (citation modified).

"To determine the reasonableness of relocation, factors to consider include potential harm in the suggested relocation area, ongoing civil strife in the country, and social and cultural constraints, among others." *Narinder Singh v. Whitaker*, 914 F.3d 654, 659 (9th Cir. 2019). Furthermore, "where the applicant has established a well-founded fear of future persecution at the hands of the

3

government, a rebuttable presumption arises that the threat exists *nationwide* and therefore that internal relocation is unreasonable." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003) (emphasis added).

The IJ found that Singh had previously suffered persecution at the hands of the Punjab police on account of his actual or perceived political affiliation with the Shiromani Akali Dal Simranjit Mann ("ADM") party. However, the IJ determined that the government rebutted the presumption of a well-founded fear of future persecution by showing Singh could safely relocate and it would be reasonable for him to do so.

The agency erred in its relocation analysis by failing to thoroughly analyze the persecution faced by ADM party members and affiliates, instead primarily discussing and reviewing evidence regarding the persecution of the Sikh population. The IJ held that Singh's previous persecution was "on account of his actual or imputed political opinion" and "[e]ach time he was mistreated by the Punjab police, the officers either made references to his affiliation with the ADM party or the timing of the arrest suggests that his involvement with the ADM party was the motive for his arrest." Singh was not persecuted specifically for his religion but for his political opinions and affiliation. While ADM is a Sikh-group,

4

Petitioner, on multiple occasions, indicated that individuals who were Sikh were not necessarily members of the ADM.

The agency's relocation analysis relied almost exclusively on evidence related to the treatment of Sikhs. For example, the portions of the 2012 Law Library of Congress Report which the IJ relies upon to show that Singh could move freely without checks or registration in India are specifically about Sikh people, not ADM members or affiliates. This is also true regarding the portion of the report which indicates that "Sikhs have 'indiscriminate' access to housing, employment, health care, and education outside of Punjab."

The only part of the 2012 Law Library of Congress Report cited to which specifically focuses on the ADM indicates that "hard-core militants" are at risk of police attention but that those who "simply hold[] pro-Khalistani views" are not. This, however, provides no insight into the danger or lack thereof to individuals who were active members and participants of the ADM. Further, that same report notes the limitations of data about persecution of ADM members, stating that "[m]ost reports describe the situation of internal relocation for Sikhs, including those who are wanted for suspected militancy, but do not specifically consider the situation of members of the Shiromani Akali Dal (Mann) Party." No other data

cited by the agency in its relocation analysis is specifically related to the experiences of ADM members.

The BIA errs when it "fail[s] to conduct a reasoned analysis with respect to Singh's individualized situation to determine if he could safely relocate within another area of India." *Ajay Singh v. Garland*, 97 F.4th 597, 607 (9th Cir. 2024) (citation modified). Here, the agency's analysis lacks critical discussion of those with the same identity as the one for which Singh is persecuted. Evidence regarding "[v]iolence against Sikhs and those who quietly hold pro-Khalistan views does not address Singh's . . . claim, which is premised on his active membership and participation in [ADM] activities." *Jaswinder Singh v. Garland*, 118 F.4th 1150, 1167 (9th Cir. 2024). As such, the relocation analysis by the agency is inadequate.

Second, the agency's relocation analysis did not specifically address Singh's continued intention to advocate for the ADM party even upon relocation. We have previously held that "[a]lthough Singh testified that he planned to continue working for the [ADM] if he were to return to India, the government did not sustain its burden of proof that Singh could safely engage in [ADM] politics outside of Punjab." *Jaswinder Singh*, 118 F.4th at 1166. We have also held that "the BIA's analysis regarding whether Singh could reasonably relocate was

6

inadequate" because "the BIA failed to specifically address Singh's stated intent to continue proselytizing for his party wherever he went." *Ajay Singh*, 97 F.4th at 607–08 (remanding to the agency "to conduct a sufficiently individualized relocation analysis") (citation modified). Because Petitioner's intent to continue advocating for his party regardless of relocation went unaddressed, the agency's analysis was inadequate.

Finally, the agency erred because it failed to address how local authorities outside of Punjab would treat Singh upon relocation. "[T]he BIA's analysis focused on whether the Punjabi police would follow Singh outside of Punjab, based on his past political activity, ultimately concluding that he was not sufficiently high-profile for them to do so. This analysis does not account for the persecution he may face outside Punjab from local authorities, or other actors, based on his future political activities." *Narinder Singh*, 914 F.3d at 661. "[T]he BIA erred by failing to address the potential harm . . . other local authorities[] might inflict upon Singh in a new state." *Ajay Singh*, 97 F.4th at 607.

For the forgoing reasons, substantial evidence does not support the agency's determination that Petitioner could safely and reasonably relocate within India. We remand Petitioner's asylum and withholding claims to the agency to determine whether Singh could safely and reasonably relocate outside of Punjab.

II

Substantial evidence supports the agency's decision to deny CAT relief. When an immigrant applies for protection under CAT, they must show it is more likely than not that they would be tortured if returned to the country of removal. *Kamalthas v. I.N.S.*, 251 F.3d 1279, 1282 (9th Cir. 2001). Here, although Singh supplied evidence of mistreatment of members of the ADM party, the agency properly concluded that the evidence does not show that there was over a fifty percent chance that Singh would be tortured upon returning to India.

III

In conclusion, we **GRANT** the petition for review as to asylum and withholding of removal, and **REMAND** to the agency. We **DENY** the petition for review as to protection under CAT. Each party shall bear their or its own costs.

**PETITION DENIED IN PART; GRANTED IN PART; REMANDED IN PART.**

*Singh v. Blanche*, No. 16-70710

MILLER, Circuit Judge, concurring in part and dissenting in part:

Surinder Singh is a member of the Shiromani Akali Dal (Amritsar), a Sikh nationalist political party in India's Punjab state commonly known as the "Mann Party." An immigration judge denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) based on a finding that he could safely relocate within India, and the Board of Immigration Appeals affirmed. "Under the substantial evidence standard, administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ani v. Bondi*, 155 F.4th 1118, 1126 (9th Cir. 2025) (quoting *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022)). Because substantial evidence supports the agency's finding, I would deny the petition for review in full.

Singh argues that the immigration judge erroneously focused on evidence pertaining to the treatment of Sikhs in general, as opposed to members of the Mann Party in particular. But in fact, the immigration judge analyzed Singh's "individualized situation," considering the "persons or entities that caused the past persecution" and the "nature and extent of the persecution," and found that he could safely relocate elsewhere in India. *Narinder Singh v. Whitaker*, 914 F.3d 654, 661 (9th Cir. 2019). The immigration judge relied on Singh's own testimony to find that Singh engaged only "in low-level party activities, such as putting up

1

posters," and that the Punjab police, who were responsible for every instance of persecution, "do not truly consider him to be a high-level leader or threat." The immigration judge also noted the absence of any "system of registration of citizens" or "checks on a newcomer" in other parts of India, as well as the fact that Singh was never fingerprinted or photographed by the Punjab police. Because Singh is not a "high-level leader" of the Mann Party or a "hard-core militant," the immigration judge found that he is of no interest to the central authorities, and the Punjab police likely would not search for or be able to locate him "in another part of the country."

Those findings were supported by a 2012 report from the Law Library of Congress, which the immigration judge cited. The report, titled "Feasibility of Relocation for Sikhs and Mann Party Members," explains that "only those [Mann Party members] considered by police to be high-profile militants are at risk of persecution even if they were to relocate." The report goes on to explain that "favoring an independent Sikh state" typically "would not make an individual a high-profile suspect" or "hard-core militant[]." The report specifically addresses the possibility of relocation for Mann Party members who, like Singh, express a fear of the Punjab police, explaining that "relocation to a different area of the country . . . is feasible where the applicant's fear is of local police and the individual is not of interest to the central authorities." Although the immigration

2

judge did not quote those specific passages from the report, the substantial evidence standard does not require an immigration judge to "individually identify and discuss every piece of evidence in the record." *Hernandez v. Garland*, 52 F.4th 757, 770 (9th Cir. 2022).

As the court points out, some of our decisions in similar cases have required the government to prove that an applicant "could safely engage in Mann Party politics outside of Punjab." *Jaswinder Singh v. Garland*, 118 F.4th 1150, 1166 (9th Cir. 2024). Those cases require the immigration judge to "specifically address Singh's stated intent to continue proselytizing for his party," *id.* (quoting *Ajay Singh v. Garland*, 97 F.4th 597, 607–08 (9th Cir. 2024)), and to discuss the persecution he "may face outside Punjab from local authorities, or other actors, based on his *future* political activities," *id.* at 1167 (quoting *Narinder Singh*, 914 F.3d at 661)).

I agree that the immigration judge here—in a decision issued before any of those cases were decided—did not engage in the specific analysis that they require. In my view, however, Singh has forfeited that objection because he does not argue that he fears persecution from the Indian government or the local authorities in any other state. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *Iraheta-Martinez v. Garland*, 12 F.4th 942, 959 (9th Cir. 2021). Instead, he argues that the Punjab police believe that he is a Sikh "leader" and "continue to maintain

an interest in him." He fears that, if he moved somewhere else in India, the tenant-registration system would reveal his location to the Punjab police, who "view him as a criminal," and they would then pursue him "throughout India." As I have explained, substantial evidence supports the immigration judge's rejection of that theory because it shows that Singh may avoid persecution by the Punjab police by relocating. *See Narinder Singh*, 914 F.3d at 661 (requiring the immigration judge to consider the "persons or entities that caused the past persecution" in assessing whether relocation is possible). Considering only the arguments advanced by Singh, I would deny the petition in full.